IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Jerome Reid, *on behalf of himself and others similarly situated*, | ) Case No.<br>)<br>) Jury Demanded |
| Plaintiff, | ) |
| vs. | ) |
| Commonwealth Equity Group LLC d/b/a Key Credit Repair, | ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

### Nature of this Action

1.  This is a class action under the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §1693, *et seq.*

### The CROA

2.  "Bad credit," aptly described by those intimately involved in the area of consumer finance as the "Scarlet Letter" of twentieth century America, is a stigma that many consumers desperately seek to escape. *See* 136 Cong. Rec. H5325-02 (daily ed. July 23, 1990).

3.  Bad credit, which may result from a variety of sources, including unemployment, divorce, illness, a lack of financial discipline, or simply too many bills, often seems an insurmountable roadblock for individuals seeking to do anything from purchasing a car to refinancing their home to obtaining approval for a job, insurance, or phone service. *See* FTC Report to Congress Under Sections 318 and 319 of the Fair and Accurate Credit Transaction Act of 2003 at 11.

4.  Consumer concern over the negative impact of adverse credit ratings has given birth

to a new industry of credit repair organizations and institutions. *See* Sen. Rep. No. 103-209, 7.

5. Organizations offering services relating to credit restoration prey upon unsophisticated and financially vulnerable consumers with the promise that bad credit can be repaired for a price, even though it is possible that nothing may be legally done to "fix" the state of the consumer's credit record. *See* H.R. Rep. No. 103-486, 27.

6. Such organizations entice consumers with quick fix products and services billed to repair, mend, revamp, or restore a consumer's credit report in order to avoid future problematic and embarrassing rejections of credit. *See* James P. Nehf, A Legislative Framework for Reducing Fraud in the Credit Repair Industry, 70 N.C. L. Rev. 781, 798-799.

7. Services and products offered by credit repair organizations are quite often simply ineffective as marketed. *Id.*

8. A typical credit repair scheme is predicated on the use of marketing claims that a consumer's credit will be repaired by subscribing to a particular company's services. *See* Federal Trade Commission, News Release, *FTC, States Give "No Credit" to Finance-Related Scams in Latest Joint Law Enforcement Sweep*, September 5, 2002.

9. Certain credit repair organizations have claimed to erase errors on a consumer's credit report by exploiting technicalities, others have promised to provide consumers with stellar credit by arranging for new credit identities, still others have engaged in debt settlement, debt consolidation, and the like, employing multi-level marketing programs, and others have actually foregone a hands-on financial services approach choosing instead to provide limited services such as mailing literature, holding training seminars, or simply providing consumers with the tools to "repair" their credit. 77 Fla. B.J. 28, 30 (2003).

10. Where some schemes are obviously fraudulent, others are deceptive or less

conspicuously unfair. *Id*.

11. Consumers desperate to repair their creditworthiness have been bilked out of millions of dollars by institutions offering and promising credit repair assistance. Sen. Rep. No. 103-209, 7-8.

12. In response to abuses, Congress enacted the Credit Repair Organizations Act ("CROA") in 1996, as an amendment to the Consumer Protection Act ("CPA"). 15 U.S.C. § 1679 *et seq*.

13. Congress did so against the backdrop of express findings that consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing; that in order to obtain and use credit consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers; and, that certain advertising and business practices of companies engaged in the character of business that Commonwealth Equity Group LLC d/b/a Key Credit Repair ("Defendant") operates have worked a financial hardship upon consumers—particularly those of limited economic means and who are inexperienced in credit matters. 15 U.S.C. § 1679(a).

14. The CROA, which became effective on April 1, 1997, was enacted to improve the policing of companies associated with services offered to aid in credit repair by ensuring that consumers seeking to utilize such services are provided additional disclosures and other protections against deceptive business practices. *See* 15 U.S.C. § 1679(b).

**The EFTA**

15. The EFTA establishes the basic rights, liabilities, and responsibilities of consumers who use electronic fund transfer services and of persons or entities that offer those services.

16. The primary objective of the EFTA is the protection of individual consumers

engaging in electronic fund transfers.

17. The Consumer Financial Protection Bureau has established regulations intended to carry out the purposes of the EFTA.

## Jurisdiction and Venue

18. This Court has subject matter jurisdiction under 15 U.S.C. § 1679g and 28 U.S.C. § 1331.

19. Venue is proper in this Court under 28 U.S.C. § 1391(b) as the acts and transactions giving rise to this action occurred in this district, and as Jerome Reid ("Plaintiff") resides in this district.

## Parties

20. Plaintiff is a natural person who at all relevant times resided in Quincy, Illinois.

21. Plaintiff is a consumer as defined by 15 U.S.C. §1693a(6).

22. Defendant is a limited liability company located in Boston, Massachusetts.

23. Defendant uses instrumentalities of interstate commerce or the mails to sell, provide, or perform (or represent that it can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (a) improving any consumer's credit record, credit history, or credit rating, or (b) providing advice or assistance to any consumer with regard to any activity or service related to improving any consumer's credit record, credit history, or credit rating.

24. Defendant is a credit repair organization as defined by 15 U.S.C. § 1679(a)(3)(A).

**Factual Allegations**

25. On June 16, 2016, Plaintiff "retain[ed] [Defendant] for the purposes of improving [his] credit profile." *See* Key Credit Service Agreement ("Service Agreement"), attached as Exhibit A.

26. Through the Service Agreement, Defendant agreed "to evaluate [Plaintiff's] current credit profile and . . . advise [Plaintiff] on the necessary steps to legally remove information that is not accurate, complete, or verifiable." *Id.*

27. Defendant also agreed to "provide unlimited advice and credit coaching to [Plaintiff]." *Id.*

28. Defendant "guarantee[d] that [it] w[ould] do everything in [its] power to legally improve [Plaintiff's] credit profile within one year from the date of [the Service Agreement]." *Id.*

29. Defendant also "guarantee[d] that [Plaintiff's] credit score w[ould] improve provided that [he] follow[ed] the advice of [Defendant]." *Id.*

30. Defendant did not provide Plaintiff an estimate of either the date by which the performance of its agreed upon services would be complete, or the length of the period necessary to perform such services.

31. Defendant required Plaintiff to pay a "work fee" "charged 5 days after the signing of the [Service Agreement]," which was to be "applied to the setup of the credit file, the review and analysis of the credit report, the collection of any documents associated with the file, and the creation of the first round of letters to the 3 credit agencies & creditors which is done within the first 5 days from the signing of [the Service Agreement] and prior to the payment."

32. Defendant also required Plaintiff to "pay[] on a month to month basis." *Id.*

33. Defendant stated that all monthly fees were due "unless [Plaintiff] request[ed] cancellation in writing 13 or more days prior to next payment date." *Id*.

34. Defendant also stated that "[t]he cancellation needs to be submitted in writing and emailed, mailed or faxed to KEY." *Id*.

35. Defendant additionally stated that Plaintiff would be "billed . . . for services rendered, not for a specific outcome." *Id*.

36. The Service Agreement required Plaintiff to "authorize [it] to charge/debit [his] Visa, MasterCard, American Express or check of savings account the first work fee of $189.95 on 8/3/16 & then each subsequent month for work performed within that month for a maximum of 5 payments," and stated that "[Plaintiff] will receive an additional 8 month of service at no additional fee."

37. In other words, despite Defendant's "guarantee[] that [it] w[ould] do everything in [its] power to legally improve [Plaintiff's] credit profile within one year from the date of [the Service Agreement]," notwithstanding it's implication that it would perform agreed-upon services for Plaintiff for a period of thirteen months, and in spite of Defendant's statement that Plaintiff would be "billed by [Defendant] for services rendered, not for a specific outcome," Defendant required full payment for its year-long to thirteen month-long endeavor less than six months after entering into the Service Agreement.

38. Defendant failed to disclose to Plaintiff the "total amount of all payments to be made."

39. Defendant electronically debited $189.95 from Plaintiff's checking account—an account established primarily for personal, family, or household purposes, and thus, an "account" as defined by 15 U.S.C. 1693a(2)—on August 3, 2016.

6

40. Defendant's debit of $189.95 from Plaintiff's checking account was a "preauthorized electronic fund transfer" as defined by 15 U.S.C. §1693a(10).

## Class Action Allegations

41. Plaintiff brings this action on behalf of himself and others similarly situated.

42. Plaintiff seeks to represent two classes of individuals defined as:

    CROA CLASS: All consumers who entered into a Key Credit Service Agreement with Commonwealth Equity Group LLC d/b/a Key Credit Repair within the five years period preceding the date of this class action complaint, and who made any payment to Commonwealth Equity Group LLC d/b/a Key Credit Repair required by the Key Credit Service Agreement.

    EFTA CLASS: All persons located in the United States who, within one year preceding the date of this class action complaint, entered into a Key Credit Service Agreement with Commonwealth Equity Group LLC d/b/a Key Credit Repair, which required him or her to cancel the agreement in writing, and/or cancel the agreement thirteen or more days prior to the next payment date.

43. The classes specifically exclude Defendant, any entity in which Defendant has or had a controlling interest, all officers and agents of Defendant, and all persons related to any of these individuals.

44. The members of the classes are so numerous that joinder of all members is impracticable.

45. The exact number of the members of the classes is unknown to Plaintiff at this time, and can be ascertained only through appropriate discovery.

46. The members of the classes are ascertainable because the classes are defined by reference to objective criteria.

47. The members of the classes are also ascertainable in that, upon information and belief, their names and addresses can be identified in business records maintained by Defendant.

7

48. There exists a well-defined community of interest in the questions of law and fact that affect the members of the classes.

49. Plaintiff's claims are typical of the claims of the members of the classes.

50. Plaintiff's claims, and the claim of the members of the classes, originate from the same conduct, practice and procedure on the part of Defendant.

51. Plaintiff's claims are based on the same theory as the claims of the members of the classes.

52. Plaintiff suffered the same injuries as each member of the classes

53. Plaintiff will fairly and adequately protect the interests of the members of the classes in this matter.

54. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the classes.

55. Plaintiff will vigorously pursue the claims of the members of the classes in this matter.

56. Plaintiff has retained counsel experienced and competent in class action litigation.

57. Plaintiff's counsel will vigorously pursue this matter.

58. Plaintiff's counsel will assert, protect, and otherwise represent the members of the classes in this matter.

59. The questions of law and fact common to all of the members of the classes predominate over questions that may affect individual class members.

60. Issues of law and fact common to all members of the classes are:

   a. Defendant's violations of the CROA;

   b. Defendant's violations of the EFTA;

  c. The existence of Defendant's identical conduct;

  d. The availability of statutory penalties; and

  e. The availability of attorneys' fees and costs.

61. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

62. If brought and prosecuted individually, the claims of each of the members of the classes would require proof of the same material and substantive facts.

63. The pursuit of separate actions by individual members of the classes would, as a practical matter, be dispositive of the interests of other members of the classes, and could substantially impair or impede their ability to protect their interests.

64. The pursuit of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

65. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the classes.

66. The damages suffered by each individual member of the classes may be relatively small; thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the classes to redress the wrongs done to them.

67. The pursuit of Plaintiff's claims, and the claims of the members of the classes, in one forum will achieve efficiency and promote judicial economy.

68. There will be no difficulty in the management of this action as a class action.

69. Defendant has acted or refused to act on grounds generally applicable to all members of the classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 15 U.S.C. § 1679d(a), (b)**

70. Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-69.

71. The CROA states:

No services may be provided by any credit repair organization for any consumer—

(1) unless a written and dated contract (for the purchase of such services) which meets the requirements of subsection (b) of this section has been signed by the consumer; or

(2) before the end of the 3-business-day period beginning on the date the contract is signed.

15 U.S.C. § 1679d(a)(1),(2).

72. The CROA additionally states:

No contract referred to in subsection (a) of this section meets the requirements of this subsection unless such contract includes (in writing)—

(1) the terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person;

(2) a full and detailed description of the services to be performed by the credit repair organization for the consumer, including –

(A) all guarantees of performance, and

(B) an estimate of—

(i) the date by which the performance of the services (to be performed by the credit repair organization or any other person) will be complete, or

(ii) the length of the period necessary to perform such services;

    (3) the credit repair organization's name and principal business address; and

    (4) a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right."

15 U.S.C. § 1679d(a)(b).

    73.    Defendant, through the Service Agreement, failed to provide Plaintiff the total amount of all payments to be made.

    74.    Defendant, through the Service Agreement, failed to provide Plaintiff an estimate of either the date by which the performance of its agreed upon services would be complete, or the length of the period necessary to perform such services.

## Count II
## Violation of 15 U.S.C. § 1679b(b)

    75.    Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-69.

    76.    The CROA provides: "No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b(b).

    77.    Defendant required full payment for its year-long to thirteen month-long endeavor to complete services outlined by the Service Agreement less than six months after entering into the Service Agreement.

**Count III**
**Violation of 15 U.S.C. § 1679b(a)(3)**

78.     Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-69.

79.     The CROA states that "[n]o person may . . . make or use any untrue or misleading representation of the services of the credit repair organization."

80.     Defendant "guarantee[d] that the [Plaintiff's] credit score will improve provided that [he] follow[ed] the advice of [Defendant]," Exhibit A, but Defendant's guarantee was necessarily false or misleading (a) as Defendant did not, at the time it made the guarantee, know Plaintiff's credit history or future credit needs, (b) since Defendant acknowledges that "neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, negative information removed from your credit report before it is seven years old," *id.*, and (c) because "no credit repair company can legitimately remove or enable consumers to remove all negative entries from a consumer's credit report." *F.T.C. v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1330 (M.D. Fla. 2010).

**Count IV**
**Violation of 15 U.S.C. § 1679b(a)(1)**

81.     Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-69.

82.     The CROA provides: "No person may . . . make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to—(A) any consumer reporting agency, or (B) any person (i) who has

12

extended credit to the consumer; or (ii) to whom the consumer has applied or is applying for an extension of credit."

83.    Defendant "guarantee[d] that the [Plaintiff's] credit score will improve provided that [he] follow[ed] the advice of [Defendant]," Exhibit A, but Defendant's guarantee was necessarily false or misleading (a) as Defendant did not, at the time it made the guarantee, know Plaintiff's credit history or future credit needs, (b) since Defendant acknowledges that "neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, negative information removed from your credit report before it is seven years old," *id.*, and (c) because "no credit repair company can legitimately remove or enable consumers to remove all negative entries from a consumer's credit report." *F.T.C. v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1330 (M.D. Fla. 2010).

## Count V
## Violations of 15 U.S.C. § 1679c(a), (b)

84.    Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-69.

85.    The CROA requires a credit repair organization to provide a consumer, before it executes any contract or agreement with the consumer, as a document separate from any written contract or other agreement between it and the consumer, or any other written material that it provides to the consumer, a written statement that reads:

> Consumer Credit File Rights Under State and Federal Law
>
> You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any "credit repair" company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.

> You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.
>
> You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.
>
> You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.
>
> Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.
>
> You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.
>
> If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.
>
> The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:
>
> The Public Reference Branch
> Federal Trade Commission
> Washington, D.C. 20580.

15 U.S.C. § 1679c(a),(b).

86. Defendant failed to provide Plaintiff with the statement required by Section 1679c(a),(b) separate from any written contract or other agreement between it and Plaintiff.

### Count VI
### Violations of 15 U.S.C. § 1693l

87. Plaintiff repeats and re-alleges each and every factual allegation included in paragraphs 1-69.

88. Section 1693e(a) of the EFTA provides in pertinent part:

A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

15 U.S.C. § 1693e(a).

89. Section 1693l of the EFTA provides in pertinent part:

No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter. Nothing in this section prohibits, however, any writing or other agreement which grants to a consumer a more extensive right or remedy or greater protection than contained in this title or a waiver given in settlement of a dispute or action

15 U.S.C. § 1693l.

90. The Service Agreement reads:

The client understands that they are paying on a month to month basis. The Client understands that that they are able to cancel out of this program at any point in time without incurring any cancellation fees. All fees for services rendered are due unless client requests cancellation in <u>in writing 13 or more days</u> prior to next payment date. The cancellation needs to be submitted in writing and emailed, mailed or faxed to KEY. KEY grants each client a 5 day grace after payment is due before credit service is suspended. Payment will continue to process for up to but not greater than 30 days after a payment has been declines until approved.

Exhibit A (emphasis in original).

91. Defendant violated 15 U.S.C. § 1693l because its Service Agreement contained provisions constituting waivers of Plaintiff's rights under the EFTA and the regulations promulgated by the Consumer Financial Protection Bureau—specifically the rights to (1) cancel preauthorized electronic fund transfers orally, (2) cancel preauthorized electronic fund transfers by providing notice to the financial institution, and (3) cancel preauthorized electronic fund transfers by providing three-days' notice.

92. As a result, Defendant, by way of the Service Agreement, caused Plaintiff to waive valuable consumer rights set forth under 15 U.S.C. §1693e(a), in violation of 15 U.S.C. §1693l.

## Trial by Jury

93. Plaintiff demands a trial by jury on all claims.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for relief and judgment, as follows:

    a. Determining that this action is a proper class action;

    b. Certifying Plaintiff as a class representative;

    c. Certifying Plaintiff's counsel as class counsel;

    d. Adjudging that Defendant violated the CROA;

    e. Adjudging that Defendant violated the EFTA;

    f. Awarding Plaintiff, and the members of the CROA class, actual damages sustained as a result of Defendant's failure to comply the CROA;

    g. Returning to the members of the CROA class all amounts paid to Defendant;

    h. Awarding Plaintiff, and the members of the EFTA class, statutory damages sustained as a result of Defendant's failure to comply the EFTA;

  i. Awarding Plaintiff, and the members of the classes, injunctive relief;

  j. Awarding Plaintiff, and the member of the classes, reasonable attorneys' fees incurred in this action, including counsel fees and expert fees;

  k. Awarding Plaintiff, and the members of the classes, any pre-judgment and post-judgment interest as may be allowed under the law;

  l. Awarding such other and further relief as the Court may deem just and proper.

Dated: February 17, 2017   Respectfully submitted,

          /s/ Aaron D. Radbil
          Aaron D. Radbil
          Greenwald Davidson Radbil PLLC
          106 East Sixth Street, Suite 913
          Austin, Texas 78701
          (512) 322-3912
          (561) 961-5684 (Fax)
          aradbil@gdrlawfirm.com