# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JEROME REID, on behalf of himself and others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 17-cv-3043 |
| COMMONWEALTH EQUITY GROUP, LLC d/b/a KEY CREDIT REPAIR, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Class Action Complaint (d/e 8) filed by Defendant Commonwealth Equity Group, LLC d/b/a Key Credit Repair. Defendant asserts that Plaintiff Jerome Reid lacks standing and that he has failed to state a claim. The Motion (d/e 8) is GRANTED IN PART.

In response to the Motion to Dismiss, Plaintiff agrees to the voluntary dismissal of Counts I and IV. Therefore, the Court

deems those counts dismissed. As for the remaining counts, even assuming that Plaintiff has properly alleged standing, Plaintiff's Counts II, III, and VI fail to state a claim and are dismissed without prejudice.

## I. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendant fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. Id. However, the complaint must set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged. Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

## II. FACTS ALLEGED IN THE COMPLAINT

In February 2017, Plaintiff filed a Class Action Complaint against Defendant for purported violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq. (CROA), and the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq. (EFTA). Plaintiff's Complaint originally contained six counts.  However, after Defendant filed the Motion to Dismiss, Plaintiff agreed to the voluntary dismissal of Counts I and IV.  Pl. Resp. at 1 n.1 (d/e 10).

The following facts come from Plaintiff's Class Action Complaint and the Service Agreement, which is referenced in the Class Action Complaint and attached to the Defendant's Motion.[1] See Citadel Group Ltd. v. Wash. Reg'l Med. Ctr., 692 F.3d 580, 591 (7th Cir. 2012) (noting that, on a motion to dismiss for failure to state a claim, the court can consider documents attached to or

---

[1] Although the Complaint references the Service Agreement and indicates that the agreement is attached to the Complaint, Plaintiff did not file the Service Agreement.  However, Defendant filed a copy of the Service Agreement with the Motion to Dismiss.

referenced in a pleading if the documents are central to the claim). These facts are accepted as true at the motion to dismiss stage. Tamayo, 526 F.3d at 1081.

Defendant is a credit repair organization in the business of providing credit repair services to consumers for a fee. Compl. ¶¶ 23-24. On June 29, 2016, Plaintiff retained Defendant for the purpose of improving his credit profile. Id. ¶ 25; Service Agreement (d/e 8-1).

In the Service Agreement, Defendant agreed to evaluate Plaintiff's current credit profile and advise Plaintiff of the steps necessary to legally remove inaccurate, incomplete, or nonverifiable information. Compl. ¶ 26. Defendant also agreed to provide unlimited advice and credit coaching. Id. ¶ 27.

Defendant guaranteed that Defendant would do everything in its power to legally improve Plaintiff's credit profile within one year from the date of the Service Agreement. Id. ¶ 28. Defendant also guaranteed that Plaintiff's credit score would improve if Plaintiff followed Defendant's advice. Id. ¶ 29.

Defendant required that Plaintiff pay a "work fee" charged five days after signing the Service Agreement. Id. ¶ 31. This work fee

applied to the setup of the credit file, review and analysis of the credit report, the collection of any documents associated with the file, and the creation of the first round of letters to the three credit agencies and creditors.  Id.  All of this work is done within the first five days of signing the Service Agreement and prior to the payment of the work fee.  Id.

Defendant also required Plaintiff to pay on a month-to-month basis.  Compl. ¶ 32.  The Service Agreement required Plaintiff to authorize Defendant to charge Plaintiff's credit card or bank account for the first work fee of $189.95 on August 3, 2016 and then each subsequent month for work performed within that month for a maximum of five payments.  Id. ¶ 36.  Plaintiff would then receive an additional eight months of service at no additional fee.  Id.  Plaintiff alleges that, despite Defendant's guarantee to do everything in its power to legally improve Plaintiff's credit profile within one year of the date of the Service Agreement and its implication that Defendant would perform services for 13 months, Defendant required full payment for its 12-to-13 month "endeavor" less than 6 months after entering into the Service Agreement.  Id. ¶ 37.

All monthly fees were due unless Plaintiff requested cancellation in writing 13 or more days prior to the next payment date.  Id. ¶ 33.  The cancellation must be submitted in writing and emailed, mailed, or faxed to Defendant.  Id. ¶ 34.  The Service Agreement provided that Plaintiff would be billed for services rendered, not a specific outcome.  Id. ¶ 35.  On August 3, 2016, Defendant electronically debited $189.95 from Plaintiff's checking account.  Id. ¶ 39.

In Count II, Plaintiff alleges that Defendant violated the provision of the CROA that prohibits a credit repair organization from charging a fee for a service before the service is fully performed:

> No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed.

15 U.S.C. § 1679b(b); Compl. ¶ 76.  Plaintiff alleges that Defendant violated this provision by requiring "full payment for its year-long to thirteen month-long endeavor to complete services outlined by the Service Agreement less than six months after entering into the Service Agreement."  Compl. ¶ 77.

In Count III, Plaintiff alleges that Defendant violated the provision of the CROA that provides that "[n]o person may . . . make or use any untrue or misleading representation of the services of the credit repair organization." 15 U.S.C. § 1679b(a)(3); Compl. ¶ 79. Plaintiffs alleges that Defendant made the misleading statement that Defendant guaranteed that Plaintiff's credit score would improve provided that Plaintiff follows Defendant's advice. Plaintiff alleges this was false and misleading because (1) Defendant did not, at the time it made the guarantee, know Plaintiff's credit history or future credit needs; (2) Defendant acknowledged that neither Plaintiff nor any credit repair organization had the right to have accurate, negative information removed from Plaintiff's credit report before the information is seven years old; and (3) no credit repair organization can legitimately remove or enable consumers to remove all negative entries from a consumer's credit report. Compl. ¶ 80.

In Count V, Plaintiff alleges that Defendant violated the provision of the CROA that requires a credit repair organization to provide a consumer with the "Consumer Credit File Rights Under State and Federal Law" information before it executes any contract

or agreement with the consumer.  15 U.S.C. § 1679c(a) (reciting the required information).   The information must be in a document separate from any written contract or other agreement between the credit repair organization and the consumer.  15 U.S.C. § 1679c(b).  Plaintiff alleges Defendant violated this provision by failing to provide Plaintiff with the required information in a document separate from the written contract between Defendant and Plaintiff.

Finally, in Count VI, Plaintiff alleges that Defendant violated the EFTA.  Section 1693e(a) of the EFTA provides that a consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the date of the transfer.  Compl. ¶ 88.   Section 1693l of the EFTA provides that no agreement between a consumer or any other person may waive any right conferred under the EFTA.  Compl. ¶ 89.  Plaintiff alleges that Defendant violated §1693l of the EFTA because Defendant's Service Agreement contained a provision constituting a waiver of Plaintiff's rights under the EFTA and the regulations promulgated by the Consumer Financial Protection Bureau.  Id. ¶ 90.

Specifically, Plaintiff alleges that the provision of the Service Agreement providing that all fees for services rendered are due unless the client requests cancellation in writing 13 or more days prior to the next payment constituted a waiver of Plaintiff's right to cancel preauthorized electronic fund transfers orally, cancel preauthorized electronic fund transfers by providing notice to the financial institution, and cancel preauthorized electronic fund transfers by providing three-days' notice.  Id. ¶ 91; ¶ 90 (also noting that the Service Agreement provides that "[p]ayment will continue to process for up to but not greater than 30 days after a payment has been declined until approved.").

Plaintiff seeks actual damages sustained as a result of Defendant's failure to comply with the CROA and statutory damages sustained as a result of Defendant's failure to comply with the EFTA.  Plaintiff also seeks injunctive relief, reasonable attorney's fees, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.  In addition, Plaintiff seeks to bring the causes of action on behalf of a class.

In May 2017, Defendant filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiff's Class Action Complaint.  Defendant

asserts that Plaintiff lacks standing to bring his CROA and EFTA claims. Defendant also argues that Plaintiff fails to state a claim in Counts II, III, and VI.

## III. ANALYSIS

The Court finds that, even assuming Plaintiff has sufficiently alleged standing, Plaintiff has failed to state a claim in Counts II, III, and VI.

## A. Plaintiff Fails to State a Claim under the Credit Repair Organization Act in Counts II and III.

Defendant argues that Plaintiff fails to state a claim under the CROA in Counts II and III.

As stated above, Plaintiff alleges in Count II that Defendant violated the provision of the CROA that prohibits a credit repair organization from charging or receiving money or other valuable consideration for a service before the service is fully performed. 15 U.S.C. § 1679b(b). Plaintiff alleges that Defendant violated this provision by requiring "full payment for its year-long to thirteen month-long endeavor to complete services outlined by the Service Agreement less than six months after entering into the Service Agreement." Compl. ¶ 77.

Defendant argues that Count II fails to state a claim because the allegations are contradicted by the plain language of the Service Agreement, which specifically provides that, with respect to the Accelerated Program Plaintiff signed up for, the monthly payments are for work that was performed within that month. <u>See</u> Service Agreement (providing, under the Accelerated program, that Plaintiff would be charged the first work fee of $189.95 on August 3, 2016 and then $189.95 for five more months for work performed within that month and that Plaintiff would receive an additional 8 months of service at no additional fee). Defendant also argues that Plaintiff's claim is based on an incorrect interpretation of the CROA. Specifically, Defendant asserts that Plaintiff is reading the statute to require that no fee be charged until all work on a client's behalf is completed. However, the statute itself provides that a credit repair organization may not charge for the performance of "any service" before "such service" is fully performed but does not refer to all services being performed before the client is charged. <u>See</u> 15 U.S.C. § 1679b(b) (providing that a credit repair organization cannot charge or receive money for "any service"

which the credit repair organization has agreed to perform before "such service is fully performed").

Plaintiff's claim is that Defendant required payment in full within 6 months of Plaintiff entering the Service Agreement that that payment was for services Defendant promised to complete over the course of 12 to 13 months. In support thereof, Plaintiff cites to Defendant's guarantee to do everything in its power to improve Plaintiff's credit profile within one year from the date of the Agreement. Plaintiff also points to Defendant providing Plaintiff with free services for eight months following payment of the initial work fee and five monthly payments. At least one court has found a violation of § 1679b(b) under similar circumstances— in that case a two-year guarantee—because the credit repair organization charged for services that the entity agreed to perform before the services had been fully performed. See United States v. Cornerstone Wealth Corp., Inc., No. 3:98CV0601-D, 2006 WL 522124, at *8 (N.D. Tex. March 3, 2006). In Cornerstone, the evidence showed that, while the defendant appeared to charge only for the three services specified in the agreement, the defendant actually charged for all of the services it provided, including "those

rendered under the rubric" of the two-year guarantee which included services performed after the payment of the charges. Id.

The problem with Plaintiff's allegations, however, is that he does not allege that he was charged for or paid for any services that had not been performed. Although Plaintiff alleges that he paid a $189.95 "work fee," he also alleges that the "work fee" was charged five days after signing the Service Agreement and applied to the setup of the credit file, review and analysis of the credit report, collection of documents associated with the file, and creation of the first round of letters to the credit agencies. Compl. ¶ 31. Plaintiff does not allege that these services were not performed or that the "work fee" was intended as partial payment of other services.

In addition, while Plaintiff alleges that Defendant required Plaintiff to pay on a month-to-month basis, (Compl. ¶ 32), Plaintiff does not allege that Defendant actually charged Plaintiff those months or that Plaintiff made any of those payments. For all the Court knows from the Complaint, Plaintiff could have cancelled the contract after paying the initial "work fee" and was never actually

charged for services that were not performed.  Therefore, the Court finds that Plaintiff does not state a claim in Count II.

In Count III, Plaintiff alleges that Defendant violated § 1679b(a)(3) of the CROA, which prohibits a person from making or using "any untrue or misleading representation of the services of the credit repair organization."  15 U.S.C. § 1679b(a)(3).

Defendant argues that Count III does not state a claim because there is ample basis for Defendant's statement that Plaintiff's credit score would improve provided that Plaintiff follows Defendant's advice.  See Service Agreement ("providing that Defendant "guarantees that the clients' credit score will improve provided that the client follows the advice of [Defendant.]  Client[s] will not make any late payments on any other accounts that they are paying on and their revolving account balances are below 30% of the available limit.")  According to Defendant, several factors affect credit scores, including payment history, available credit, negative public records, length of credit history, and evidence of taking on new debt.[2]  Moreover, Defendant asserts there is nothing

_____

[2] Defendant asks the Court to take judicial notice of the five FICO Score factors referenced in FICO, Curing Credit Score Confusion, p. 4 (March 2014)

about Defendant's lack of familiarity with Plaintiff's credit history or the limits to which one is able to remove negative information from a credit report that merits the conclusion that the statement was false.

Count III fails to state a claim.  Plaintiff alleges that the Defendant's guarantee that Plaintiff's credit score would improve is false because (1) Defendant did not, at the time it made the guarantee, know Plaintiff's credit history or future credit needs; (2) Defendant acknowledged that neither Plaintiff nor any credit repair organization had the right to have accurate, negative information removed from Plaintiff's credit report before it is seven years old; and (3) no credit repair company can legitimately remove or enable consumers to remove all negative entries from a consumer's credit report.

The mere fact that Defendant did not know Plaintiff's credit history when it made the representation does not support an inference that the statement that Defendant would improve Plaintiff's credit was untrue or misleading.  As Defendant points

---

(white paper) (d/e 8-2).  Plaintiff did not object to the Court taking judicial notice.  The Court will do so.

Page **15** of **21**

out, numerous factors affect a person's credit score.  Moreover, the Service Agreement demonstrates that Defendant did <u>not</u> represent that all negative information could be removed from Plaintiff's credit report and affirmatively states that accurate, negative information cannot be removed before the information is seven years old.  <u>See</u> <u>also</u> Service Agreement ("Accurately reported items on a credit report[] cannot be removed).  Plaintiff has not alleged a plausible claim that the statement that Defendant guaranteed to improve Plaintiff's credit score if Plaintiff followed Defendant's advice was misleading or untrue.  Therefore, Count III is dismissed without prejudice for failure to state a claim.

**B.     Plaintiff Fails to State a Claim under the Electronic Fund Transfer Act**

In Count VI, Plaintiff alleges that Defendant violated § 1693l because its Service Agreement contained provisions constituting a waiver of Plaintiff's rights under the EFTA.  Section 1693l of the EFTA provides that:

> No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter.

15 U.S.C. § 1693l.  Under § 1693e(a) of the EFTA, a consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of the transfer.

The Service Agreement provides that all fees for services rendered are due unless the client requested cancellation in writing 13 or more days prior to the next payment date:

> The client understands that they are paying on a month to month basis.  The Client understands that they are able to cancel out of this program at any point in time without incurring any cancellation fees.  All fees for services rendered are due unless client requests cancellation in writing 13 or more days prior to the next payment date.  This cancellation needs to be submitted in writing and emailed, mailed[,] or faxed to [Defendant]. [Defendant] grants each client a 5 day grace after payment is due before credit service is suspended. Payment will continue to process for up to but not greater than 30 days after a payment has been declined until approved.

Service Agreement (emphasis in original).

Plaintiff alleges that the Service Agreement violates § 1693l because it constitutes a waiver of Plaintiff's right to cancel preauthorized electronic fund transfers by orally contacting the financial institution within three days' preceding the transfer.

Defendant argues that the provision in the Service Agreement does not interfere with Plaintiff's right to stop payment of the fund transfer by notifying his financial institution orally or in writing at any time up to three business days before the scheduled transfer date. The Court agrees with Defendant.

In the Service Agreement, Plaintiff authorized Defendant to debit his bank account. The Service Agreement also provides that fees for services rendered are due unless Plaintiff requested cancellation in writing 13 or more days prior to the next payment date. The Service Agreement does not, however, say anything about Plaintiff's right to stop the electronic payment but only addresses cancellation of the Service Agreement. See, e.g., Miller v. Interstate Auto Group, Inc., No. 14-cv-116-slc, 2015 WL 1806815, at *7 (W.D. Wis. April 21, 2015) (noting, on a motion for summary judgment, that the EFT Authorization provision requiring 5-days' notice pertained to cancellation of the plaintiff's contractual right to revoke her entire authorization, not her separate statutory right to ask the bank to stop payments made pursuant to that authorization). In that regard, this case is distinguishable from the cases cited by Plaintiff. Baldukas v. B &

R Check Holders, Inc., No. 12-cv-01330-CMA-BNB, 2012 WL 7681733 (D. Colo. Oct. 1, 2012), report & recommendation adopted by 2013 WL 950847 (D. Colo. Mar. 8, 2013); Murphy v. Law Offices of Howard Lee Schiff, P.C., No. 13-10724-RWZ, 2014 WL 710959, at *3 (D. Mass. Feb. 25, 2014) (relying on the reasoning of Baldukas).

For example, in Baldukas, the parties' authorization agreement provided that the defendant's authority to debit the plaintiff's account remained in full force until the Defendant and the financial institution received written notification of termination and in such manner as to afford defendant and the financial institution a reasonable opportunity to act on it. Baldukas, 2013 WL 950847, at * 2. The requirement that the plaintiff give written notification to the financial institution conflicted with § 1693l, which permitted oral notification to the financial institution. Id. The court, therefore, found that the plaintiff sufficiently alleged that the agreement caused the plaintiff to waive her rights to the stop payment provisions of the EFTA. Id.; see also Simone v. M & M Fitness LLC, No. CV-16-01229-PHX-JJT, 2017 WL 1318012, at *1, 3 (D. Ariz. Apr. 10, 2017) (finding that the agreement precluded

the plaintiff from exercising her right freely and without legal exposure where the agreement required the customer to contact the defendant about any stop payment in an attempt to resolve the matter prior to stopping payment and, if the customer did not do so, held the customer legally liable for all "items and fees").

In this case, Plaintiff has not alleged that the Service Agreement contains similar language purporting to affect or limit Plaintiff's ability to stop payment by notifying the financial institution orally or in writing up to three days preceding the scheduled date of the transfer. The Service Agreement also specifically provides that the client can cancel at any time and is not charged a cancellation fee. Only fees for services rendered are due if a client does not cancel with 13 days' notice. The Court also notes that the Complaint does not allege any injury to Plaintiff, although that is a subject more relevant to lack of standing. Consequently, Count VI fails to state a claim.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss Plaintiff's Class Action Complaint (d/e 8) is GRANTED IN PART. Counts II, III, and VI are DISMISSED without prejudice for failure

to state a claim.  Counts I and IV are deemed voluntarily dismissed by Plaintiff.  Plaintiff is granted leave to file an amended complaint on or before August 24, 2017.  Defendant shall answer or otherwise plead to the amended complaint on or before September 7, 2017.  Defendant may again raise the standing issue.  If Plaintiff does not file an amended complaint, Defendant shall respond to Count V of the original complaint on or before September 7, 2017.  Defendant may file an answer to Count V or may again raise the standing issue in a motion to dismiss.

**ENTER: August 9, 2017**

**FOR THE COURT:**

_s/Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**